UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:20-CR-28 JD

(2) CRYSTAL EGAN

## OPINION AND ORDER

The incarcerated Defendant Crystal Egan, proceeding *pro se*, has moved for a reduction in her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] (DE 198.) For the reasons herein, the motion will be denied.

### A. Background

In 2020, Crystal Egan was indicted by a federal grand jury on four counts, all under an aiding and abetting theory. (DE 11.) One count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and two counts of brandishing a firearm during a crime of violence,[2] in violation of 18 U.S.C. § 924(c)(1)(A). Ms. Egan's role in these armed robberies was to serve as a getaway driver, which included the duty of obtaining the getaway cars. The gunmen was her boyfriend Armand White, and his accomplices were Joshua Gant, and Daniel Scott.[3] Ms. Egan also aided in this crime by helping to recruit Daniel Scott, who indicated he participated because Egan had previously offered him

---

[1] Ms. Egan has a separate pending motion, through counsel, to modify her sentence based on retroactive amendments to the U.S. Sentencing Guidelines. (DE 211.) That motion will be addressed in a separate order.

[2] One count for the bank robbery and one count for the Hobbs Act robbery respectively.

[3] White and Gant committed the Hobbs Act robbery of a convenience store while White and Scott committed the bank robbery.

assistance when no one else would. Both robberies involved the gunmen brandishing their

firearms at employees and in the case of the Hobbs Act robbery, at a convenience store, one

gunman threatened to shoot the clerk if she did not comply. The clerk was ultimately transported

to the hospital by her spouse due to the anxiety caused by being robbed at gunpoint. Ms. Egan

was found guilty, after pleading guilty to the count of abetting a Hobbs Act robbery and the

count of abetting the brandishing a firearm during that robbery. (DE 106.) As part of the plea

agreement the remaining counts were dismissed upon motion of the Government. On July 22,

2021, the Court sentenced Ms. Egan to a sentence of 18 months for the Hobbs Act robbery and

84 months for the firearm charge to be served consecutively, for a total sentence of 102 months

imprisonment. (DE 169.)

Ms. Egan subsequently filed this motion for a reduction in sentence which the Court

referred to the Federal Community Defenders' Office. The Office determined that it was unable

to assist her. Therefore, the Court will consider Ms. Egan's own submissions. The Government

has responded to Ms. Egan's motion and therefore it is ripe for decision.


**B. Legal Standard**

A court generally cannot modify a sentence once the sentence has been imposed. 18

U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence,

after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant

such a reduction," the reduction is consistent with policy statements issued by the Sentencing

Commission, and the defendant has submitted such a request to the warden at least 30 days

before filing a motion or has fully exhausted all administrative rights within the Bureau of

Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A). This analysis proceeds in two steps. *United States*

*v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (*cert*. denied 142 S. Ct. 1363 (2022)). At the first

step the defendant must identify an extraordinary and compelling reason warranting a sentence

reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion

conferred by the statute, considers any applicable § 3553(a) factors as part of determining what

reduction to award the defendant. *Id.*

The application notes to the Sentencing Guidelines offer some examples of when

extraordinary and compelling reasons may be present. As applicable here, those include when

the defendant is suffering from a terminal illness or is suffering from a serious physical or

medical condition that substantially diminishes his ability to provide self-care within the prison.

U.S.S.G. § 1B1.13.[4] Specifically, the relevant provision states:

**(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist
under any of the following circumstances or a combination thereof:
**(1) Medical Circumstances of the Defendant.**--
    **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness
    with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability
    of death within a specific time period) is not required. Examples include metastatic solid-
    tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and
    advanced dementia.
    **(B)** The defendant is--
        **(i)** suffering from a serious physical or medical condition,
        **(ii)** suffering from a serious functional or cognitive impairment, or
        **(iii)** experiencing deteriorating physical or mental health because of the aging
        process, that substantially diminishes the ability of the defendant to provide self-
        care within the environment of a correctional facility and from which he or she is
        not expected to recover.
    **(C)** The defendant is suffering from a medical condition that requires long-term or
    specialized medical care that is not being provided and without which the defendant is at
    risk of serious deterioration in health or death.
    **(D)** The defendant presents the following circumstances--
        **(i)** the defendant is housed at a correctional facility affected or at imminent risk of
        being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing

---

[4] The Court notes that the definition of extraordinary and compelling reasons has been updated by the
Sentencing Commission since Ms. Egan filed her motion. The Court will apply the latest version of the Guidelines
in assessing her request. As Ms. Egan only seeks relief on the basis of COVID -19 exposure risk, the Court will only
assess the medical circumstances definition of extraordinary and compelling circumstance. The Court has
considered the other definitions proffered by the Guidelines and finds none are applicable to Ms. Egan.

public health emergency declared by the appropriate federal, state, or local
authority;
**(ii)** due to personal health risk factors and custodial status, the defendant is at
increased risk of suffering severe medical complications or death as a result of
exposure to the ongoing outbreak of infectious disease or the ongoing public
health emergency described in clause (i); and
**(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13.

### C. Discussion

Having reviewed Ms. Egan's submissions, the Court finds Ms. Egan has not established

an extraordinary and compelling reason warranting modification of her sentence.

Ms. Egan raises a single argument that she possesses an extraordinary and compelling

reason for a sentence modification. Specifically, that the COVID-19 pandemic[5] increases the

hardship of imprisonment and that in light of this increased hardship, the punitive effect of each

day served is increased so each day should count for additional time served.[6] Ms. Egan does not

identify any specific personal health risks she faces as a result of COVID-19 exposure or

infection.

The Government opposes Ms. Egan's motion. They argue that she has failed to exhaust

her administrative remedies, she has not presented an extraordinary and compelling reason

---

[5] The Court will note that while COVID-19 remains a circulating disease within our society and continues to pose increased risk to certain individuals based on their health conditions, the federal Public Health Emergency declared to combat the pandemic has ended.

[6] Ms. Egan specifically requests that the Court afford her the relief of "hard time credits" whereby she is credited two days of incarceration for every day actually served. (DE 198 at 2–3.) Ms. Egan cites no legal authority or precedent for this unusual form of relief which would have the Court intrude upon the BOP's purview of calculating sentencing credit and potentially conflict with Congress' requirement that federal inmates serve 85 percent of their imposed sentence. *See* 18 U.S.C. § 3624 (b)(1) (setting a maximum of 54 days, per year of sentence, for which an inmate may receive credit towards early release). As such, the Court will construe Ms. Egan's request as one for a reduction of sentence under the familiar vehicle of § 3582. This has the opportunity to afford Ms. Egan the relief she seeks, an earlier departure from prison than currently scheduled, without the pitfalls of intruding on the BOP's authority or running afoul of Congress' commands.

warranting compassionate release and the § 3553(a) factors do not favor release. The Court

agrees and will deny her motion due to her failure to exhaust. In the alternative, the Court would

also deny her motion for a failure to present an extraordinary and compelling reason for her

release and because the § 3553(a) factors weigh against her release.

### (1) *Ms. Egan has not exhausted her administrative remedies*

In the alternative, the Court considers whether Ms. Egan exhausted her administrative

remedies. Prior to adjudicating a motion directly from a defendant under § 3582(c)(1)(A), a

defendant "must first present his request for compassionate release to the warden and exhaust

administrative appeals (if the request is denied) or wait '30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Sanford*,

986 F.3d 779, 782 (7th Cir. 2021).

The Government has raised this issue, arguing Ms. Egan has not exhausted her remedies,

which means the Court must address it. "Failure to exhaust administrative remedies is an

affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect

not to raise it." *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (citations omitted).

Ms. Egan's motion did not include any evidence she had exhausted her administrative

remedies, nor did it even claim to have exhausted her remedies. The Government's response

includes BOP records indicating Ms. Egan never requested any administrative remedy from the

BOP. (DE 205-1.)

Consequently, the Court is obligated to deny Ms. Egan's request for compassionate

release for failure to exhaust her administrative remedies.

**(2)** *Ms. Egan has not established an extraordinary and compelling reason for a sentence reduction*

As an initial matter, Court would find Ms. Egan has not established an extraordinary and compelling reason for a sentence reduction or release. Specifically, the Court finds that Ms. Egan has not satisfied the criteria of U.S.S.G. § 1B1.13(b)(1)(D)(i) that she is at a correctional facility "affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." The latest COVID-19 data for FCI Hazelton indicates zero active cases at the facility.[7]

Further, Ms. Egan has not articulated any personal medical circumstance which satisfies the definition of U.S.S.G. § 1B1.13(b)(1)(D)(ii). Ms. Egan has not identified any corroborated personal health condition in her motion which places her at higher risk of harm from COVID-19 exposure or infection. Rather she speaks of the general difficulties associated with living in a secure communal environment while a virulent disease is circulating, notably the increased stress which it places upon her and the limitations it places on rehabilitative projects such as class attendance. (DE 198 at 2–3.)

The Government, after submitting copies of Ms. Egan's prison medical records, argues that there is no evidence of any condition which makes her more likely to get very sick from COVID-19. The Court agrees. While Ms. Egan self-reported a diagnosis for ovarian cancer, which would increase her COVID-19 risk, there is no medical evidence confirming such a

---

[7] Federal Bureau of Prisons, BOP Statistics: Inmate COVID-19, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed January 16, 2024) (reflecting data as of January 12, 2024, that FCI Hazelton and USP Hazelton (jointly represented by facility code "HAX") had zero active cases).

diagnosis and she is not receiving any treatment for that condition. (*See* DE 205-3 (Ms. Egan's medical records).) Additionally, while Ms. Egan was prescribed medication for hypertension, another condition which could increase her risk, there was no actual diagnosis of hypertension made. (*Id.*) To the extent that Ms. Egan can produce this information, she is free to file an additional request for compassionate release.

### (3) *The § 3553(a) factors weigh against reducing Ms. Egans's sentence*

The Court also concludes, in the alternative, that even if Ms. Egan had exhausted her administrative remedies and established an extraordinary and compelling reason for her release, the § 3553(a) factors would weigh against her release. Ms. Egan does not directly discuss the § 3553(a) factors in her motion, but the Court construes her references to her rehabilitative efforts in prison as indirect argument of the factors.

The Court commends Ms. Egan for her rehabilitative efforts while incarcerated and sympathizes with her frustration at the limitations on such opportunities imposed by COVID-19 mitigation measures. Nonetheless, the Court must disagree with her arguments. The § 3553(a) factors include a requirement that the sentence imposed should "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Ms. Egan aided and abetted a crime of violence by serving as the getaway driver of the armed robbery of a convenience store where the gunmen brandished firearms and one threatened to shoot the clerk unless she complied with their demands. This experience was so traumatic for the clerk that she sought medical help immediately afterwards. Further, Ms. Egan helped to recruit Daniel Scott to serve as a gunman in the bank robbery and he indicated he felt the need to participate due to a sense of obligation to Egan based on her prior

assistance to him. This suggests Ms. Egan's appeal was critical in recruiting Scott and bringing about the bank robbery. Moreover, Ms. Egan committed these offenses while on supervised release for another offense in this District. These are clearly very serious offenses and Ms. Egan demonstrated contempt for the law by committing them while on supervised release. As such, the § 3553(a) factors strongly weigh against an early release.

Moreover, Ms. Egan has only served approximately two-and-half-years of her eight-and-a-half-year sentence. This is well short of half of her sentence (it is approximately thirty percent). The Court finds that a modification of its original sentence to slightly more than one quarter of the original term imposed would fail to reflect the seriousness of Ms. Egan's conduct, promote respect for the law, and provide just punishment for her offense. Accordingly, the Court finds that the § 3553(a) factors would weigh against Ms. Egan's release even if she had properly exhausted her administrative remedies and provided an extraordinary and compelling reason for his release.

### D. Conclusion

For those reasons, the Court DENIES Ms. Egan's motion for compassionate release or reduction in sentence. (DE 198.)

SO ORDERED.

ENTERED: January 16, 2024

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court
